Bear Wilner-Nugent, OSB #044549
Bear Wilner-Nugent, Counselor and Attorney at Law LLC
620 SW 5th Avenue, Suite 1008
Portland, Oregon 97204
Phone: (503) 351-2327
Fax: (503) 914-6665
Email: bwnlaw@gmail.com
Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 3:18-CR-00622-SI |
| Plaintiff, | **DEFENDANT'S SENTENCING MEMORANDUM** |
| v. | |
| KERMIT TY POULSON, | |
| Defendant. | |

Defendant Kermit Ty Poulson, through counsel, respectfully submits this memorandum in support of the sentencing recommendation that he will make to the court on September 18. A cornerstone of the federal sentencing system is that "'the punishment should fit the offender and not merely the crime,'" *Pepper v. United States*, 562 U.S. 476, 487-488, 131 S. Ct. 1229, 179 L. Ed. 2d 196 (2011), quoting *Williams v. New York*, 337 U.S. 241, 247, 69 S. Ct. 1079, 93 L. Ed. 1337 (1949). Applying this principle, and relying on the analysis below, the court should sentence defendant to time served in prison for his sole count of conviction, transmitting

threatening communications with intent to extort in violation of 18 U.S.C. §875(d). The 24-month prison term recommended by the government and the presentence report writer is excessive because it fails to adequately take into account both Mr. Poulson's gravely troubled mental and neurological health history and the relative lack of harm to the victim as a result of this offense. The court should impose a one-year term of supervised release.

### I. NO FACT OR LEGAL PROVISION CONTAINED OR CITED IN THE PLEA AGREEMENT OR THE PRESENTENCE REPORT POSES A BARRIER TO DEFENDANT REQUESTING A PRISON SENTENCE OF TIME SERVED.

Paragraph 7 of defendant's plea agreement obligates defendant to agree to an advisory sentencing guidelines range calculation that exceeds the maximum sentence provided by statute for his offense, 24 months prison. *See also* PSR ¶108. Paragraph 3 of the plea agreement accurately recites the maximum term of supervised release for a Class E felony such as this, which is one year. 18 U.S.C. §3583(b)(3); *see also* PSR ¶110. All parties are therefore before the court with a shared understanding that defendant will receive the one-year supervised release term. The parties equally understand that the real issue to be resolved at sentencing is whether the 24-month statutory maximum prison sentence is the right length, or too long, to address defendant's conduct in light of defendant's personal characteristics and needs. *See* 18 U.S.C. §3553(a). Paragraph 9 of the plea agreement permits defendant to "seek any lawful sentence," which includes the shorter prison sentence of time served — or just over one-third of the statutory maximum sentence — for which defendant prays.

The final presentence report, which defendant has personally reviewed, is factually accurate in most respects. Defendant continues to dispute the appropriateness of taking into account his pending charges, with regard to which he remains imbued with the presumption of

DEFENDANT'S SENTENCING MEMORANDUM – Page 2

innocence, however. *See* PSR ¶¶77-82 and Objection Letter ¶¶3-8. Defendant also disagrees with the probation officer's sentencing recommendation of 24 months prison because that recommendation does not take into account the reasons for a reduced sentence that are detailed below. Defendant does not, however, disagree with the calculations by which the probation officer reached a total offense level of 20. *See* PSR ¶¶23-32.

The parties have no agreement about criminal history. Plea Agreement ¶7. Based on the information that defendant has gathered to date, however, defendant has no basis to dispute the conclusion in the final presentence report that he has 11 criminal history points and thus is within criminal history category V. PSR¶60. If all one did in this case were to perform the typical suite of guidelines calculations, the recommended sentence would make sense.

Put another way, the recommended statutory maximum sentence appears *absolutely* mitigated, taking into account the calculations to which defendant has just referred. That is because it is significantly shorter than the prison sentence for which the advisory guidelines would call in the absence of an enforceable statutory maximum. The problem is that a 24-month sentence in this case would not be *relatively* mitigated. In other words, if the 24-month ceiling for defendant's sentence were also effectively the floor, then there would be no mechanism for giving due weight to defendant's personal qualities or the particular circumstances of his offense. Mitigating evidence, if believed, should by definition result in sentencing a defendant to a shorter term than the statutory maximum, even when the advisory guidelines calculation appears to situate that maximum at a lower point in the possible sentencing range than the application of 18 U.S.C. §3553(a) factors without as much regard to the guidelines.

## II. DEFENDANT'S CRIME WAS A PRODUCT OF HIS MENTAL ILLNESS; THE SAME ILLNESS IS CAUSING DEFENDANT TO HAVE A SIGNIFICANTLY HARSHER EXPERIENCE IN CUSTODY THAN OTHER DEFENDANTS.

The factual record before the court at sentencing is replete with information about defendant's bipolar disorder and alcoholism, and about the numerous adverse health consequences that defendant has suffered — and that have been exacerbated by substandard correctional health care — during the 15 years since he was partially paralyzed in an automobile-versus-pedestrian accident. This information is well-canvassed in the presentence report. PSR ¶¶ 87, 90, 96-101. Additionally, using the confidential PSR supplement process, defendant has submitted 15 exhibits drawn from his medical and mental health records, which were generated between late 2004 and mid-2019 in both hospital and custodial settings.

A review of these exhibits reveals three consistent themes. First, to the extent that defendant has repeatedly expressed to his caregivers a desire to harm anyone, defendant has overwhelmingly expressed an impulse driving him toward self-harm rather than harm to others. Second, defendant's psychological condition and its outward expressions have been remarkably stable over time and in a wide variety of settings, meaning that there is no evidence defendant has been growing more harmful toward others in a fashion that would support the imposition of successively more incapacitative sentences. Put another way, this unfortunately means that defendant has been suffering intractably with little real enduring help, as opposed to temporary palliation, from the various psychotropic medications he has been prescribed.

Third — and, perhaps, most importantly — the manic component of defendant's bipolar disorder has consistently expressed itself over time through pressured speech and an unceasing torrent of written communication. This helps the essentially communicative nature of defendant's criminal conduct in this case make more sense as part of a very lengthy pattern

rather than an abrupt outburst that would be more concerning due to its unpredictability. The court can take judicial notice of the high volume and irrationality of defendant's attempts over the last several months to communicate with it *pro se*. Defense counsel represents to the court, without disclosing the contents of any attorney-client communications, that, viewed against defendant's exceedingly lengthy, repetitive, attachment-filled, contradictory, daily letters to counsel, defendant's communications with the court are just the tip of the iceberg. The point is that defendant is someone who simply has much to say, with little sense about it, and that his statements toward Mayor Wheeler veered into and out of criminality in an aberrant way rather than a planned and coordinated one.

Rather than redundantly embed lengthy quotations from his exhibits in this memorandum to illustrate the above summary, defendant respectfully requests that the court review Exhibits 101 through 115 themselves. Doing so will show that defendant's retrospective observations track with the exhibits' original contents. Defendant submits that each of these aspects of his condition individually, and all of them together, constitute grounds for a downward variance by reason of diminished capacity and because it is morally wrong to punish an unwell person as harshly as one who is well. *See United States v. Chatman*, 986 F.2d 1446 (D.C. Cir. 1993).

United States Sentencing Guidelines Section 5K2.13 provides, in part, that:

> A downward departure may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense. Similarly, if a departure is warranted under this policy statement, the extent of the departure should reflect the extent to which the reduced mental capacity contributed to the commission of the offense.

The application note to that guideline provides:

> "***Significantly reduced mental capacity***" means the defendant, although convicted, has a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the

defendant knows is wrongful.

While the guideline, on its face, does not permit such a departure in a case involving a "serious threat of violence," that restriction does not apply in defendant's case both because the guidelines are now, as a whole, advisory, and because in any event the guidelines range is so far above the statutory maximum sentence to which defendant is subject that any lesser sentence would necessary be a variance (outside the guidelines system, but guided by similar considerations) rather than a departure in the strict sense of that term in any event. *See e.g. United States v. Menyweather*, 447 F.3d 625, 634 (9th Cir. 2006); *United States v. Cantu*, 12 F.3d 1506, 1512, 1516 (9th Cir. 1993).

Finally, defendant asks the court to consider the case of *United States v. Jones*, 352 F. Supp. 2d 22 (D. Maine 2005). There, a mentally ill defendant convicted of possessing a firearm faced an advisory guidelines sentence of 12 to 18 months prison. Although the defendant did not qualify for other downward departures, because the guidelines were by that point only advisory, the court concluded that a time-served sentence of six months, or one third of the maximum advisory guidelines range, would better insure the defendant's continuing medical care or other correctional treatment in the most effective manner. As the *Jones* court explained, "the marginal protection to the public afforded by a few more months in prison is more than offset by the increased risk upon this defendant's later release after the interruption of his treatment and other regimens." For that reason, the six-month sentence imposed would "in all likelihood better protect the public over the long term." Defendant could suggest no better logic for giving proper weight to his physical and mental health difficulties than this.

### III. THIS WAS NOT A CRIME IN WHICH DEFENDANT'S CONDUCT RESULTED IN SUBSTANTIAL OR ENDURING HARM TO THE VICTIM.

Defendant accepts responsibility for, and apologizes for, his offense, which undoubtedly caused Mayor Wheeler and his family real discomfort and distress. On the other hand, however, defendant notes that his threat was conveyed via social media rather than in person; was not accompanied by any menacing physical conduct; was not repeated on later occasions or amplified by other persons; and was repeatedly and vociferously retracted by defendant in the subsequent months (as defendant's remarks to the court and the probation officer on multiple occasions reflect). As Paragraph 19 of the presentence report indicates, neither the mayor nor his family have provided the probation office or the government with any victim impact statements. Defendant is unaware of any planned victim impact testimony at sentencing. Even in a sentencing régime where the burden of proof is only by the preponderance of the evidence, there still must be some evidence to support any disputed fact. There is no evidence of such enduring harm from defendant's Instagram comments as to merit a two-year prison sentence.

A downward departure — or, as in this case, a variance — may be merited where "the severity of the misconduct, its timing, and the disruption it causes" are not within the typical range. *Koon v. United States*, 518 U.S. 81, 100, 116 S. Ct. 2035, 135 L. Ed. 2d 392 (1996); U.S.S.G. ch. 1 Pt. A comment 4(b). This is such a case — one outside the "heartland" of the conduct primarily intended to be punished by statute and guideline alike. Even though the guideline analysis that applies, as detailed in the presentence report, would result in a sentence much higher than 24 months, application of the principles embodied in 18 U.S.C. §3553(a) to the less-than-typical harm actually resulting from defendant's conduct the type of *relatively* mitigated sentence discussed *supra*, at p. 3. *See Rita v. United States*, 551 U.S. 338, 127 S. Ct. 2456, 186 L. Ed. 2d 203 (2007); *see also United States v. Pallowick*, 364 F. Supp. 2d 923 (E.D.

Wisc. 2005). The court should not heed the recommendations to impose the statutory maximum sentence.

## CONCLUSION

Considering all of the factors discussed in defendant's sentencing submissions — both in writing and to be made orally at the sentencing hearing — a prison sentence of time served and a supervised release term of one year for Count One jointly comprise a sentence "sufficient, but not greater than necessary, to comply with the purposes" of the law. 18 U.S.C. §3553(a).

RESPECTFULLY SUBMITTED September 11, 2019.

/s/ Bear Wilner-Nugent
Bear Wilner-Nugent, OSB #044549
Attorney for Defendant
