BILLY J. WILLIAMS, OSB #901366
United States Attorney
District of Oregon
**PAUL T. MALONEY, OSB #013366**
Assistant United States Attorney
Paul.Maloney@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | 3:18-cr-00622-SI |
| v. | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **KERMIT TYLER POULSON,** | |
| **Defendant.** | |

### Introduction

Defendant, a 40-year-old man with criminal convictions spanning two decades and five jurisdictions, is before the Court for sentencing for online threats he made against a public official. In October 2018, he threatened to firebomb Portland Mayor Ted Wheeler's home and office in comments posted to the Mayor's Instagram account. Defendant has pleaded guilty to Count One of the Indictment, Transmitting Threatening Communications with Intent to Extort,

**Government's Sentencing Memorandum**                                                                                              **Page 1**

pursuant to a plea agreement (ECF #59). For this, defendant's latest crime, the United States concurs with U.S. Probation's recommendation and seeks 24 months incarceration.

**Factual Background**

**A.     The Offense Conduct**

On October 8, 2019, Portland Mayor Ted Wheeler posted a photo on Instagram. Defendant, using Instagram profile riot_cop_7, posted a series of threatening comments:



Defendant referenced a recent officer-involved shooting in which Patrick Kimmons was shot and killed during an encounter with two Portland Police officers. Defendant demanded that Mayor Wheeler summarily fire the officers involved in the shooting, and asked if the Mayor, "Ever had a Molotov cocktail thrown threw [sic.] your bedroom window at 4 am?"

Defendant continued to post more comments and threatened harm to the Mayor's office if the Mayor did not dismiss the officers.



The threats dismissed the ability of the police to protect the Mayor. In an effort to deflect blame for the threats, defendant attempted to attribute the threatening messages to others. Defendant's efforts in no way diminished the seriousness, and severity of the threat for failing to comply with his demand that Mayor Wheeler fire the officers. Defendant referred to removing the brickwork from the Mayor's home and throwing those through the windows.

By describing brick features of the Mayor's home, defendant clearly inferred that defendant and those who meant to act on the threats knew where the Mayor lived. Later, in the

comments defendant made explicit reference to a "Molotov cocktail party" and listed the

Mayor's house number and street name[1]:



The threats continued, referencing the officer involved in the shooting and threatening

harm to other officers.

---

[1] The Mayor's post is still available online. Some of the comments have been removed from the site. Accordingly the sequence of the comments may appear in a different order depending on when the comments were preserved.



These threats were reported to the police and the FBI after Mayor Wheeler's spouse saw them posted online, and expressed fear for her family's safety. Investigators learned that in the days leading up to these public comments, defendant had been sending direct messages to the Mayor's Instagram account. These messages were obscene, laden with profanity, and contained express threats such as, "You'll end up in a carpet bag. Keep your rat mouth shut or you're dead," and specific threats to kill police officers. The direct messages contained the following unnerving threats: "You're being greelighted by multiple gangs," "That means you are now a target. No longer safe to ride your bike. The gang putting out the green light have killed multiple cops," "The green light goes away after they've read in the paper that ▆▆▆ is fired," "It's

**Government's Sentencing Memorandum**                                                                              **Page 5**

Or it's your life," and "You have a decision to make. Choose wisely." The direct messages also specifically referred to the Mayor's home by street name and house number.

Investigators identified the IP address riot_cop_7 used to post the Instagram comments, determined the physical address associated IP address, and executed a search warrant at the residence. Defendant was a guest of the homeowner who was on tour with a local punk rock band. Defendant was physically present when the warrant was executed. Defendant cooperated with the investigation, identified his phone for the agents, and agreed to answer their questions.

Defendant made a number of misleading statements. He initially tried to tell the investigators that he was not angry with the mayor, and that his comments were relaying threats defendant overheard from others. Defendant said he was merely repeating threats made by others during a protest of the officer involved shooting. Defendant also stated that it was possible someone else had used his phone to make the comments. Investigators noted that the protest was three days before the threats were posted, and confronted defendant with the inconsistency. After being confronted, Poulson admitted that he alone posted the comments, but that some of his statements were inspired by what he had heard from other activists at the protest. He went on to apologize about having scared Mayor Wheeler, and even wrote an apology letter.

B. The Charges

Defendant was indicted by the grand jury in a single count indictment with Transmitting Threatening Communications with Intent to Extort in violation of Title 18, United States Code Section 875(d) (ECF #1(under seal), and #2 (redacted indictment)).

C. The Plea Agreement & Guideline Computations

Defendant pleaded guilty, pursuant to a plea agreement (ECF #28 and 29). The government has agreed to recommend a sentence at the low-end of the calculated advisory guideline, not to exceed 24 month's imprisonment (ECF #29, ¶ 9). The government also will, subject to the limitations set forth in the agreement, recommend that defendant receive a three-level reduction for acceptance of responsibility, and a four-level reduction for all applicable factors under 18 U.S.C. § 3553(a) (*id.*, ¶ 17). Defendant has agreed to abandon all right, title and any interest he may have in the assets seized during the investigation to include his cell phone (*id.*, ¶ 10). Defendant has agreed to waive his right to appeal, subject to the standard limitations (*id.*, ¶ 11). The Court is not bound by the terms of the plea agreement (*id.*, ¶ 12). The defendant is free to argue for any lawful sentence (*id.*, ¶ 9).

The parties agreed to the following PSR computations:

| Provision | Description | Offense Level Calculation |
|---|---|---|
| USSG § 2B3.2 | Extortion by Force or Threat of Injury or Serious Damage | BOL=18 |
| USSG § 3A1.2 | Official Victim | +3 |
| | **Combined Adjusted Offense Level** | **21** |
| USSG § 3E1.1 | Acceptance of Responsibility | -3 |
| 18 U.S.C. § 3553(a) | Sentencing Factors | -4 |
| | **Total Offense Level** | **14** |
| USSG § 4A1.1 | Criminal History Category (estimate) | IV |
| | **ADVISORY SENTENCING RANGE:** | **27-33 Months** |
| **18 U.S.C. § 875(d)** | **Statutory Maximum** | **24 Months** |

In addition to the official victim adjustment, the PSR calculation adds two levels for an express, or implied threat of death, or bodily injury (PSR ¶ 24). The parties' agreement does not include this specific offense characteristic, and the government stands by the agreement.[2]

---

[2] Defendant is charged under 18 U.S.C. § 875(d), which has a statutory maximum of 24 months' imprisonment. This crime does not include an element of threatening to kidnap or cause death or bodily injury to another, while other crimes defined in the same section do. 18 U.S.C. §§ 875(a), 875(b), and 875(c). The statutory maximum for these offenses are 20 years, 20 years, and five years respectively.

The government agrees that the PSR correctly calculates defendant as Criminal History Category (CHC) V (eleven points). The PSR calculates the guideline to be a level 16, CHC V, producing an advisory range of 41-51 months. The parties' agreed upon guideline of a level 14, and a CHC V produces an advisory guideline range of 27-33 months' imprisonment. This difference does not affect the overall outcome because both the PSR, and parties' agreed upon calculations exceed the statutory maximum of 24 months.

**Argument**

**A.     Government's Recommended Sentence**

The parties do not contest the guideline calculation. The nature and circumstances of the offense reveal that defendant repeatedly threatened harm to a public official, his family, and his office if the official did not fire a police officer. Defendant's messages were calculated to extort a thing of value (the officer's job) under the threat of damage to the Mayor's home and office.

Defendant was fully aware of the nature of his crime. His initial misleading statements to the police about someone else using his phone, and that he was only repeating threats made by others, demonstrate a consciousness of guilt because defendant was falsely trying to mitigate his own involvement in the crime by deflecting blame on to others. Eventually, defendant admitted he had made the threats because he was upset about the police, and what he perceived to be the Mayor's inadequate response to police use of force incidents.

Defendant's criminal history is extensive, and covers a gamut of various offenses from assault (PSR ¶¶ 35, 37, 40, 52, and 56) and disorderly conduct (PSR ¶¶ 41, 42, 48, 49 and 58), to drugs (PSR ¶ 47) and a domestic violence offense (PSR ¶ 39) . His criminal history also includes prior convictions for threat-related conduct (PSR ¶¶ 40, 42, 43, 51, and 56). Defendant

**Government's Sentencing Memorandum**                                                                 **Page 8**

has other pending threats offenses and is presumed not guilty (PSR ¶¶ 77, 78, and 79). Defendant's criminal history is significant not only because of his persistent involvement in criminal activity, but also because of his numerous offenses involving threats to others.

The government does not dispute defendant's mobility issues, or his medical history. Defendant has limited use of his legs, uses a wheelchair, and requires a catheter stemming from various injuries including those he suffered from a car crash. Defendant has asserted he also suffers from various mental health ailments, and the government has no information to rebut these assertions. Despite these infirmities, as demonstrated by his significant criminal history, these various ailments have not impeded defendant's persistent involvement in criminal activity. Neither his physical nor his mental limitations have limited defendant's willingness or ability to commit crimes.

The recommended sentence of 24 months will make clear that defendant's physical and mental conditions do not give him license to repeatedly threaten others. It is proportionate to the seriousness of the offense, and will serve as a deterrence to others who, like the defendant, use the internet to publicly broadcast threats.

Threatening to fire bomb a public official's home and office is an offense that merits a significant sanction. This incident required immediate investigation to determine the nature and seriousness of the threat, thus needlessly wasting resources and distracting investigators from other matters. The public nature of defendant's threats could have inspired another person to act on his threats. Similarly, threats like defendant's impact the community because those considering public office may be chilled from participating in our democracy in order to spare

themselves and their families from this kind of online abuse. A 24-month sentence is sufficient, but not more than necessary to achieve the goals and purposes of sentencing.

### B. Restitution & Forfeiture

The victim has not requested any restitution in this matter. The defendant has agreed to abandon his interest in the instrumentality of this offense (his phone).

### Conclusion

Based on the foregoing, the government recommends that this Court impose a sentence of 24 months, followed by a one-year term of supervised release, subject to the standard conditions 1-4 and the special conditions 1-15 set forth in the PSR.

Dated: September 11, 2018

Respectfully submitted,

BILLY J. WILLIAMS
United States Attorney

*/s/ Paul T. Maloney*
PAUL T. MALONEY, OSB #013366
Assistant United States Attorney